CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

OCT 24 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JAMES W. CAMPBELL, SR., | ) | |
| | ) | |
| Petitioner, | ) | CASE NO. 7:18CV00277 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| TAMMY BROWN, | ) | By: Hon. Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Respondent. | ) | |

Petitioner James W. Campbell, Sr. ("Campbell" or "Petitioner"), a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging criminal convictions in Amherst County on August 26, 2015 (Case No. CR15015213-00), and on November 9, 2015 (Case No. CR15015307-00). The matter is presently before me on the respondent's Motion to Dismiss and Campbell's response thereto. After a full review of the record, for the reasons set forth below, I will grant the Motion and dismiss Campbell's petition.

I.

Both convictions arise from Campbell's arrest on August 6, 2014, for the manufacture of methamphetamine in violation of Virginia Code § 18.2-248, following execution of a search warrant for his home and curtilage.[1] Campbell waived preliminary hearing on the charge, and on February 10, 2015, the Grand Jury issued an indictment charging that Campbell "did unlawfully and feloniously, manufacture, distribute or possess with the intent to sell, give or distribute a controlled substance . . . methamphetamine, in violation of § 18.2-248" on August 6, 2014. (Appendix in Case No. 15015213-00, hereafter "App. 1", p. 3.) Campbell filed a motion to

---

[1] The factual allegations in this section are drawn from the pleadings and attachments thereto filed by the parties in this case [ECF Nos. 1 & 14], and from the paper and electronic records from the Virginia Court of Appeals and from the Virginia Supreme Court in both state cases, on file with the Clerk.

suppress the evidence, alleging that the search warrant and supporting affidavit had never been filed in the clerk's office as required by Virginia Code § 19.2-54, and that the search violated his rights under the United States Constitution.

Less than a week before trial, the Clerk's office located the misfiled search warrant, but the second page of the supporting affidavit was not there. On April 2, 2015, Campbell filed an amended motion to suppress and a motion for relief from waiver (based on late discovery of the misfiled search warrant), renewing his challenge to the validity of the search warrant under Virginia Code § 19.2-54 and under the Fourth Amendment to the United States Constitution. Specifically, he alleged that an essential portion of the affidavit in support of the search warrant had never been filed in the Clerk's office. Indeed, the second page of the affidavit, containing all the information on which probable cause was based, was never found in the clerk's office or court files, apparently due to a malfunction of the fax machine. See Commonwealth v. Campbell, 807 S.E.2d 735, 737 (Va. 2017), cert. denied, 139 S. Ct. 421 (2018), reh'g denied, 139 S. Ct. 1244 (2019).

On April 3, 2015, the parties appeared for hearings on the motion to suppress and for trial. Campbell was arraigned, entered a plea of "not guilty," and said he was ready to go forward with the trial that day, electing to be tried by the judge without a jury. (App. 1, pp. 20–24.) The court ruled that a violation of Virginia Code § 19.2-54 was a procedural matter that did not require suppression of the evidence. (Id. at 36.) Before the evidentiary hearing on the Fourth Amendment issues, Campbell requested a continuance to be better prepared for the hearing and its procedural requirements. (Id. at 43.) The court granted the continuance and directed defense counsel to file a full motion by May 1, setting forth all issues he wished to raise. (Id. at 48.) As instructed, Campbell filed a second amended motion to suppress.

The evidentiary hearing on the second amended motion to suppress was scheduled for June 3, 2015. On that date, Investigator James Begley of the Amherst County Sheriff's Office testified that he applied for a search warrant from the magistrate's office on August 6, 2014. He provided three copies of the supporting affidavit to the magistrate, one for the magistrate to file with the court, one for the officer, and one for the target of the investigation. He testified that the magistrate asked him to make some clerical changes to the affidavit, which he handwrote on the form. The magistrate then signed the search warrant, keeping his copy and giving the other two to Begley. Begley then left the magistrate's office to execute the search warrant.

As required by Virginia Code § 19.2-54, the magistrate faxed the affidavit, warrant, and blank inventory to the clerk of court. Unfortunately, the clerk received four pages, but not the *correct* four pages. The pages the clerk received and filed contained only the first page of the affidavit (with only the numbers 4, 5, and 6 from the second page superimposed on the first page), two copies of the search warrant, and the blank inventory page. The Commonwealth offered Investigator Begley's copy of the affidavit, signed by the magistrate, to the court, but his copy had handwritten changes on the first page of the affidavit that were not on the copy filed in the clerk's office, and the clerk's office had handwritten changes that were not on Begley's copy. Therefore, the judge did admit Begley's copy to prove the basis for the search warrant, because he could not say that there were not handwritten changes on page two of the affidavit that never reached the clerk's office. (App. 1, pp. 105–106.)

Following the evidentiary hearing, the trial judge entered an order granting Campbell's motion to suppress and giving the Commonwealth until June 12, 2015, to advise the court of its intent to proceed to trial or dismiss the case. (Id. at 61.) On June 8, the Commonwealth elected to go forward with trial and filed a motion for reconsideration of the suppression order, arguing for

the first time that the search of the property was justified by probable cause and exigent circumstances, an exception to the search warrant requirement. (Id. at 109–118.) The hearing on motion for reconsideration and the trial were both set for June 17, 2015, in order to preserve Campbell's speedy trial rights. (Id. at 119.)

On June 9, 2015, the Grand Jury issued a new indictment (Case No.15015307-00) charging Campbell with possession of methamphetamine with intent to distribute on August 6, 2014, in violation of Virginia Code § 18.2-248. (Appendix in Case No. 15015307-00, hereafter "App. 2", p. 1.) On June 12, 2015, the court appointed counsel for Campbell on the new charge (the same attorney already representing him on the first indictment), and the case was then placed on the docket "to be tried or set for trial" on June 17, 2015, five days later. (Id. at 8.)

On June 17, 2015, the court held another evidentiary hearing on the suppression issues. Although the judge affirmed his earlier ruling regarding the invalidity of the warrant, he deferred decision on the "exigent circumstances" argument, stating he would rule after hearing the evidence at trial. (Id. at 153–156.) He then arraigned Campbell again on the first indictment, and Campbell again tendered a plea of "not guilty." The court started to arraign him on the second indictment, but counsel objected on the grounds that he had been appointed only five days earlier and was not prepared to go forward at that time. (App. 1, pp. 158–159.) The second case was postponed, to be set at or before the August grand jury date. After taking care of that administrative matter, Campbell proceeded to trial on the first indictment before the judge, without a jury.

The uncontradicted trial evidence established that a paid informant had contacted Investigator Begley about a possible "meth cook" at Campbell's house in Amherst County. For about a week, the informant advised Begley that Campbell was unable to secure enough pseudoephedrine to proceed with the "cook", but on August 6, 2014, in the early afternoon, he

advised that Campbell had been able to procure Sudafed (pseudoephedrine) and that Campbell planned to cook meth later that evening. Begley asked the informant to keep him apprised of the situation, and he began to coordinate manpower with his supervisors and contacted the narcotics team at the Virginia State Police ("VSP"). Throughout the afternoon and early evening, the informant called Begley with updates on the activities at the shed on Campbell's property, including that Campbell was crushing Sudafed and that two others were rolling up balls of aluminum foil.

While the VSP and other officers from Amherst County set up near Campbell's property, Begley applied for and obtained a search warrant. He signed the application for search warrant at 10:30 p.m., and the magistrate issued the warrant at 10:47 p.m. Investigator Brandon Hurt, a sniper with the Amherst Sheriff's Office, took a position in the trees, approximately 25 to 30 yards from Campbell's shed, where he remained for approximately 45 minutes before the law enforcement team entered the property to serve the search warrant. While in that position, Hurt observed a woman take aluminum foil into the shed and another person take a short piece of hose into the shed. Just before the team moved in to execute the warrant, Hurt saw smoke coming from inside the shed and heard people talking either inside or in front of the shed. As law enforcement vehicles entered the property, occupants of the shed began to run, but they were caught and detained by the police and identified as Campbell and a codefendant, Timothy Birch. Later, when VSP Special Agent Phillips entered the shed to remove environmental hazards, he found Campbell's adult daughter (another codefendant) hiding inside.

At Campbell's trial, both Begley and Phillips testified as experts about the hazards of methamphetamine production. Begley noted that the process uses volatile chemicals that are highly combustible. Further, the manufacturing process can produce phosphine and chlorine,

- 5 -

carcinogenic gasses that can sometimes be fatal. Phillips testified that the one-pot method used on Campbell's premises that evening is the least hazardous method of manufacturing the product, but still has significant risks. For example, both lithium strips and organic solvents are used to separate the Sudafed. Lithium strips react with water, and the moisture of a humid day or residual moisture in Coleman fuel can spark fire from the lithium strips, triggering an explosion, like a plume or fireball. The process also produces ammonia gas, which can cause respiratory distress, blindness, or even death if inhaled in sufficient quantities. Ammonia gas can also cause glass containers to explode.[2]

Campbell did not introduce any evidence on his own behalf. The trial judge found that the Commonwealth proved both probable cause and exigent circumstances sufficient to justify a warrantless search of Campbell's property, and denied Campbell's motion to exclude the evidence obtained as a result of the search. He then found the evidence sufficient to convict Campbell of the charge, noting that, "[T]he nature and the quantity of this process would lead the court to believe that there was an intent to sell, give, or distribute the substance that was involved." (App. 1, p. 333). He entered a conviction order the same date, reflecting a conviction for manufacturing methamphetamine in violation of Virginia Code § 18.2-248. On August 26, 2014, the court sentenced Campbell to twenty-five years in prison, with fourteen years of the sentence suspended. Campbell noted his appeal to the Virginia Court of Appeals.

While the appeal of the first case was still pending, the parties scheduled a trial date for the second indictment. Campbell then filed a motion to dismiss, alleging that the second indictment was barred by the Fifth Amendment's Double Jeopardy Clause and by Virginia Code § 19.2-294,

---

[2] Other witnesses testified against Campbell at the trial, including the informant and Campbell's daughter, but the substance of their testimony is not relevant to determination of the issues in this proceeding.

and a motion to suppress, arguing the same grounds relied upon in the first case. On November 9, 2014, after incorporating the record of the first case into the record for the second case, the court overruled both motions. Campbell then entered a plea agreement with the Commonwealth, preserving his right to appeal both motions pursuant to Virginia Code § 19.2-254. Campbell pled guilty and, pursuant to the plea agreement, the court sentenced him to eleven years in prison, to run concurrently with the sentence in the first case, followed by two years of post-release supervision. Once again, Campbell perfected an appeal to the Virginia Court of Appeals.

On October 25, 2016, the Court of Appeals reversed Campbell's conviction on the first indictment, finding that failure to file timely and properly the second page of the search warrant affidavit as required by Virginia Code § 19.2-54 required suppression of the evidence. Campbell v. Commonwealth, 791 S.E.2d 351 (Va. Ct. App. 2016), rev'd, 807 S.E.2d 735 (Va. 2017), cert. denied, 139 S. Ct. 421 (2018), reh'g denied, 139 S. Ct. 1244 (2019). Holding that the statute provided broader protection than the Fourth Amendment, the court held that the Fourth Amendment became "irrelevant" once the warrant was struck on state law grounds. Id. at 356 n.2. Further, because police obtained a warrant, the search was not a warrantless search, so exceptions to the search warrant requirement did not apply. Id.

The Virginia Supreme Court reversed the decision of the Court of Appeals and reinstated Campbell's conviction on December 14, 2017. Commonwealth v. Campbell, 807 S.E.2d at 740. The Court assumed without deciding that the search warrant was invalid under Virginia Code § 19.2-54, but held that invalidity of the search warrant under the statute (or under the Fourth Amendment) did not preclude a valid warrantless search if the Commonwealth met the burden of proving an exception to the warrant requirement. Id. at 738. Campbell's subsequent requests for rehearing and appeal were denied.

While the first case was pending review in the Virginia Supreme Court, the Court of Appeals stayed proceedings in the second case. Once the Virginia Supreme Court reinstated the first conviction, the Court of Appeals followed its decision as the "law of the case," affirming the trial court's denial of Campbell's motion to suppress in the second case. Campbell v. Commonwealth, 817 S.E.2d 663, 667 (Va. Ct. App. 2018). The Court of Appeals also affirmed the conviction, finding no statutory or double jeopardy bar to the second proceeding because Campbell's request to continue trial of the second charge was a consent to two trials and a voluntary waiver of any double jeopardy objection. Id. at 668–70. The Virginia Supreme Court declined to hear Campbell's appeal from the Court of Appeals. Campbell did not file a state habeas petition.

On June 19, 2018, Campbell filed a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, in this court. In his petition, Campbell raises five challenges:

1. That the state court erred in permitting admission of evidence under the exigent circumstances exception to the search warrant requirement when the state's search warrant was invalid under Virginia Code § 19.2-54;

2. That the state court erred in allowing admission of evidence under the exigent circumstances exception to the search warrant requirement when the search warrant was invalid under the Fourth Amendment and the "good faith exception" was not applicable;

3. That the state court erred in finding the existence of exigent circumstances to justify a warrantless search;

4. That the state court erred in failing to dismiss the second indictment under Virginia Code § 19.2-294; and

5. That the state court erred in failing to dismiss the second indictment for violating his constitutional right against double jeopardy.

[ECF No. 1, p. 20.]

## II.

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254 (a). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). The Virginia Supreme Court's decision that a violation of Virginia Code § 19.2-54 does not preclude admission of evidence under the exigent circumstances exception to the Fourth Amendment search warrant requirement is a claim that rests solely on the interpretation of Virginia statutes and case law, and as such, it is not cognizable on federal habeas review unless petitioner alleges that the state court's application of the statute is a cognizable violation of the federal constitution. See, e.g., Wright v. Angelone, 151 F.3d 151, 158 (4th Cir. 1998). Campbell alleges that the state court decisions violate the Fourth Amendment of the U.S. Constitution, and I address those allegations in the next section, but Campbell's first claim is based only on the Virginia statute and, therefore, must be dismissed.

## III.

If a state prisoner had the opportunity for full and fair litigation of a Fourth Amendment claim, he is not entitled to federal habeas relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial. Stone v. Powell, 428 U.S. 465, 494 (1986). This is because the social costs of the exclusionary rule are high. Id. at 490. The evidence that a defendant seeks to exclude is usually reliable and is often the most compelling evidence of guilt. Id. Application of the exclusionary rule cripples the "truthfinding process" and sometimes allows the guilty to go free. Id. Despite these costs, the Supreme Court and others have found it necessary for society to pay this cost in order to deter police misconduct and promote respect for

Fourth Amendment values. Id. at 490–91. Once a defendant has had the opportunity to raise his Fourth Amendment challenges before a trial court and at least one appellate court, however, there is little deterrent benefit in allowing further litigation of the issue, and even less benefit to reversing a conviction because evidence is suddenly deemed inadmissible, even though at least two prior courts had the opportunity to consider the constitutionality of the search from which evidence was obtained. Id. at 491. The decreasing deterrent value of continued efforts to exclude evidence no longer outweighs the social costs of the exclusionary rule when a case has reached this stage. Id. at 491–93.

When considering a petitioner's Fourth Amendment claims, then, a federal district court's first inquiry is whether the petitioner had an opportunity to raise his Fourth Amendment claim in the highest state court. Doleman v. Muncy, 579 F.2d 1258, 1265 (4th Cir. 1978). If such an opportunity was afforded to the petitioner, and nothing in the claim or in the record suggests that the prisoner's opportunity to fully and fairly litigate his claim was impaired, then the court need look no further into the Fourth Amendment claims.

In the present case, Campbell had several opportunities to litigate his Fourth Amendment claims, and he took full advantage of each opportunity. He argued before the trial court that the search warrant was invalid under the Fourth Amendment because the probable cause statement was missing in the affidavit filed with the clerk's office. The trial court agreed with him and further agreed that the "good-faith exception" for officer reliance on the warrant, recognized in United States v. Leon, 468 U.S. 1250 (1984), did not apply. But the trial court also found that the exigent circumstances exception to the warrant requirement applied. Campbell appealed to the Court of Appeals, where his argument was adopted and the trial court's ruling was reversed. Then, the Virginia Supreme Court heard the merits of the case and reinstated the conviction. The United

States Supreme Court denied certiorari. In short, Campbell fully and capably litigated the Fourth Amendment issue before three different state tribunals. The Virginia courts provided Campbell a full and fair opportunity to litigate the Fourth Amendment claims he raised, both that the exigent circumstances exception did not apply if the police relied on an invalid warrant and that the Commonwealth failed to establish exigent circumstances. Accordingly, Stone precludes habeas relief on Campbell's second and third claims.

## IV.

Like his first claim, Campbell's claim that his trial on the second indictment violated Virginia Code § 19.2-294 arises solely under state law and is not cognizable on habeas review under 28 U.S.C. § 2254 (a) and Estelle v. McGuire, 502 U.S. 62 (1991). Thus, his fourth claim must also be dismissed.

## V.

Resolution of Campbell's fifth claim, that the second indictment was barred by principles of double jeopardy, requires more complex analysis. Under § 2254, a very deferential standard of review applies to state court decisions that have adjudicated a petitioner's claims on the merits. In such a case, habeas relief shall not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In this case, the Virginia Court of Appeals clearly addressed Campbell's double jeopardy claim. Campbell v. Commonwealth, 817 S.E.2d 663 (Va. Ct. App. 2018). The Virginia Supreme Court summarily denied Campbell's petition for further appeal. The United States Supreme Court has held that such denials are presumed to be decisions on the merits of the claim. Harrington v. Richter, 562 U.S. 86, 99 (2011). Further, a federal court on habeas review is to "look through" the

summary decision to the last court decision providing a rationale for the merits decision and to presume that the state high court adopted the same reasoning. Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

Having determined that Virginia courts addressed the Campbell's claim, the next issue is whether the Court of Appeals opinion is contrary to, or involves an unreasonable application of, clearly established Supreme Court law. The threshold question is whether there is any "clearly established Federal law, as determined by the Supreme Court." Lockyer v. Andrade, 538 U.S. 63, 71 (2003). In order to be clearly established law, the position urged by the habeas petitioner must have been pronounced by the Supreme Court in its holding (not dictum), and the Court's holding must have been announced before the state court's final decision on the merits. Williams v. Taylor, 529 U.S. 362, 412 (2000).

The Virginia Court of Appeals based its decision on a recent Supreme Court decision, Currier v. Virginia, 138 S. Ct. 2144 (2018). In Currier, the defendant was charged in a single indictment with burglary, grand larceny, and unlawful possession of a firearm by a convicted felon, arising from a single course of conduct. Id. at 2148. As alleged by the Commonwealth, the defendant had broken into a home and stolen a safe containing cash and guns; because of his prior felony conviction, he could not legally possess any firearm, much less a stolen one. Concerned that a jury might be prejudiced against him by learning of his prior felony conviction, the defendant moved to sever the firearm charge from the other two. At the first trial, limited to the burglary and grand larceny charges, the jury acquitted the defendant. He then moved to preclude the second trial on double jeopardy grounds. Id. at 2148–2149. Assuming without deciding that double jeopardy would normally apply to a successive prosecution for the firearm charge, the Supreme Court held that "there is no violation of the Double Jeopardy Clause when [the defendant] elects to have the

. . . offenses tried separately and persuades the trial court to honor his election." Id. at 215 (quoting Jeffers v. United States, 432 U.S. 137, 152 (1977)). Accordingly, the state court denied Campbell's double jeopardy claim.

I cannot conclude the Virginia court's decision is "contrary to" federal law. A state decision can be contrary to Supreme Court precedent in only one of two ways: (1) by reaching a conclusion opposite to the Supreme Court's decision or (2) by reaching the opposite result from the Court on facts that are materially indistinguishable from the facts in the Court's case. Williams, 529 U.S. at 405 (O'Connor, J., concurring). The Virginia Court did not reach an opposite result or conclusion from the Supreme Court's decision in Currier.

Admittedly, Currier is distinguishable from the present case in one significant way: Campbell's charges were not initiated in a single indictment, and the second indictment issued only five days before the trial date scheduled for the first indictment. The Virginia court did not consider this distinction significant. Even if I were to believe that the Virginia Court of Appeals decided the issue erroneously, that is not sufficient for a grant of habeas relief. When the state court decision is not contrary to Supreme Court precedent, a federal habeas court must find the state decision to be an "unreasonable application" of Court precedent in order to grant relief. Lockyer, 538 U.S. at 75. A decision is an "unreasonable application" of Court precedent only if the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103. Where the trial court, appeals court, and presumptively, the state high court all agreed that Campbell's request for a later trial date removed double jeopardy concerns, I cannot say that no fair-minded jurists could agree with the decision, especially in the absence of any

precedent involving separate indictments such as those herein.³ As the Court has noted, when its cases give no clear answer to the exact question presented, let alone an answer favorable to the petitioner, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" Wright v. Van Patten, 552 U.S. 120, 126 (2008) (citations omitted). Accordingly, I will dismiss Campbell's fifth and final claim.

## VI.

In accordance with the foregoing, I will grant the respondent's Motion to Dismiss. An appropriate Order will enter this day.

The Clerk is directed to send copies of this Memorandum Opinion and accompanying Order to petitioner and to counsel of record for the respondent.

**ENTERED** this 24th day of October, 2019.

/s/ Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE

---

³ Even had I reached the substance of Campbell's double jeopardy argument rather than deciding that he had waived the issue, his constitutional claim would fail on the merits. The Double Jeopardy Clause prohibits a second prosecution for the same offense after either acquittal or conviction; whether an offense is the "same offense" when a single act or transaction gives rise to two different charges, however, is determined by the Blockburger test, recognized in the seminal case Blockburger v. United States, 284 U.S. 299 (1932). That test focuses on whether each offense requires proof of a fact which the other does not. Id. at 304. If so, then double jeopardy does not bar the second prosecution. In this case, Campbell's first conviction was for manufacturing methamphetamine, which requires proof that he knowingly made the unlawful substance; possession with intent to distribute does not require that the defendant make the substance, just that he have it. His second conviction, possession with intent to distribute methamphetamine, required proof of the specific intent to distribute, which is not required for a conviction of manufacturing. Because each offense required proof of an element that the other did not, the second charge did not violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. Cf. Logan v. Commonwealth, 600 S.E.2d 133, 133–35 (Va. Ct. App. 2004) (holding that convictions for possession of marijuana and delivering marijuana to a prisoner, both made illegal by the same section of the Virginia Code, did not violate the defendant's Double Jeopardy rights). This rule applies even when the same act violates two clauses of the same statute. See, e.g., United States v. Randall, 171 F.3d 195, 209 (4th Cir. 1999).